Brian R. Michalek (SBN 302007)
Casey T. Grabenstein (*pro hac vice* – to be filed)
Joseph M. Kuo (*pro hac vice* – to be filed)
SAUL EWING LLP
161 N. Clark St., Suite 4200
Chicago, IL 60601
Telephone: (312) 876-7100
Facsimile: (312) 876-0288
brian.michalek@saul.com
casey.grabenstein@saul.com
joseph.kuo@saul.com

Andrew Schwerin (*pro hac vice* – to be filed)
SAUL EWING LLP
Centre Square West
1500 Market Street, 38th Floor
Philadelphia, PA 19102 2186
Telephone: (215) 972-7184
Facsimile: (215) 972-7184
andrew.schwerin@saul.com

Michael E. Flynn-O'Brien (SBN 291301)
BUNSOW DE MORY LLP
701 El Camino Real
Redwood City, CA 94063
Telephone: (650) 351-7245
Facsimile: (415) 426-4744
mflynnobrien@bdiplaw.com

*Attorneys for Plaintiff InfoExpress Inc.*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **INFOEXPRESS INC.**<br><br>Plaintiff,<br><br>v.<br><br>**CISCO SYSTEMS, INC.,**<br><br>Defendant. | Case No.<br><br>**COMPLAINT FOR PATENT INFRINGEMENT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff InfoExpress Inc. ("InfoExpress" or "Plaintiff"), by its undersigned counsel, for

its Complaint against Defendant Cisco Systems, Inc. ("Cisco" or "Defendant"), states as follows:

## I.      NATURE OF THE ACTION

1.      This is a civil action arising under the patent laws of the United States, 35 U.S.C. § 1 et seq., including 35 U.S.C. § 271, based on Cisco's unauthorized and willfully infringing manufacture, use, sale, offering for sale, and/or importation of products and the practicing of methods incorporating InfoExpress's patented inventions.

2.      InfoExpress is owner of all right, title, and interest in and to multiple United States patents including United States Patent Nos. 7,523,484 (the '484 Patent); 8,051,460 (the '460 Patent); 8,677,450 (the '450 Patent); 8,578,444 (the '444 Patent); 8,347,350 (the '350 Patent); and 8,117,645 (the '645 Patent) (collectively, "the Patents-in-Suit").

3.      Cisco manufactures, makes, uses, provides, sells, offers for sale, imports, and/or distributes products, services, and systems which directly infringe the Patents-in-Suit.  The Patents-in-Suit represent InfoExpress's significant investment into the network access and security space.

## II.      THE PARTIES

4.      Plaintiff InfoExpress is a California corporation with its principal place of business located at 2975 Bowers Ave #323, Santa Clara, CA 95051.

5.      Defendant Cisco Systems, Inc. is a corporation that is organized under the laws of Delaware and that has place of business located at 170 West Tasman Dr., San Jose, CA 95134.

## III.      JURISDICTION AND VENUE

6.      This is an action for patent infringement, which arises under the Patent Laws of the United States, in particular, 35 U.S.C. §§ 271, 281, 282, 284, and 285.  This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 and 1338(a).

7.      The Court has personal jurisdiction over Cisco because it is headquartered within this judicial district and further because it has committed acts giving rise to this action within

California and within this District.  Cisco also regularly does business or solicits business in this District and in California, engages in other persistent course of conduct and derives substantial revenue from products and/or services provided in this District and in California, and has purposefully established substantial, systematic and continuous contacts with this District and should reasonably expect to be sued in a court in this District.

8.      Cisco has committed acts of patent infringement in this District and elsewhere in California.

9.      Venue is proper in this District under 28 U.S.C. §§ 1391 and 1400(b) because Cisco has an established place of business in this District, including at 170 West Tasman Dr., San Jose, CA 95134, has committed acts within this District giving rise to this action and resulting in the derivation of substantial revenue from goods and services provided to customers in California, and continues to conduct business in this District, including one or more acts of selling, using, importing, and/or offering for sale infringing goods and/or performing support service to Cisco customers in this District.

**IV.      INTRADISTRICT ASSIGNMENT**

10.      Pursuant to Local Rule 3-2(c) and the Court's Assignment Plan (General Order No. 44) D(3), intellectual property cases, such as this one, are assigned on a district-wide basis.

**V.      FACTUAL ALLEGATIONS**

*InfoExpress's Innovations*

11.      Established in 1993, InfoExpress is a privately held network security solutions corporation with its offices in Santa Clara, California.

12.      Since its inception, and leading up to its groundbreaking patented network access control ("NAC") and endpoint compliance innovations, InfoExpress has been a pioneer in designing and implementing foundational security technologies.

13.     InfoExpress's security innovation dates as early as the 1990s when it developed Virtual Transmission Control Protocol ("VTCP"), a virtual application programming interface ("API") that allowed online dial-up accounts to run internet applications directly on user personal computers.

14.     VTCP was used by InfoExpress's corporate customers to provide remote employee access to corporate networks.  This, however, required additional security.

15.     In response, InfoExpress developed and introduced VTCP Secure in 1996.  VTCP Secure was a seminal approach to remote access Virtual Private Networks ("VPN").  Like its predecessor, VTCP Secure was also tremendously popular and sales jumped exponentially.  It also garnered substantial industry praise.[1]

16.     As culture evolved, additional security measures were needed to protect corporate resources from potentially compromised remote VPN-connected PCs.  Thus, in or around 2000, InfoExpress developed CyberArmor—a personal firewall that provided protection to the PCs.  Again, InfoExpress received praise and awards in the security industry for CyberArmor.

17.     While CyberArmor was successful, InfoExpress customers reported that some individual users did not install CyberArmor or disabled it.  To address this issue, InfoExpress innovated to develop a CyberGatekeeper Remote product and service which could be placed between VPN servers and its corporate customer networks to monitor whether the CyberArmor personal firewall was installed and active on the remote PC before granting access to the corporate network.

---

[1] HelpNetSecurity, *Infoexpress VPN Software VTCP/Secure Chosen Windows & .Net Magazine Readers' Choice Award Winner*, https://www.helpnetsecurity.com/2002/09/18/infoexpress-vpn-software-vtcpsecure-chosen-windows-net-magazine-readers-choice-award-winner/ (last visited May 18, 2023) ("VTCP/Secure 5.1 was selected a winner in the Best VPN category of the Windows & .NET Magazine Readers' Choice Awards.")

18.     A shift in the security space came when companies started transitioning employees from desktops to mobile devices such as laptops.  While this expanded mobile network connectivity and usage, it also increased corporate security risks.  Because CyberGatekeeper Remote was located behind VPN servers and because a corporate organization provided access to the network with hundreds, if not, thousands of switches, adding extra CyberGatekeeper Remote behind each switch was impractical.

19.     Accordingly, in 2003, InfoExpress invented network access control through insertion of a gatekeeper between access devices and the authentication servers via a new NAC product.  This product, called CyberGatekeeper LAN, was the world's first network access control product for the local area networks ("LAN").

20.     To date, InfoExpress continues to offer products and services in the network security space. However, Defendant's infringement and usurping of InfoExpress's patented technology have resulted in a loss of market share, loss of customers, and declining sales.

### InfoExpress's Patent Portfolio

21.     The InfoExpress patent portfolio includes several issued and enforceable United States patents ("the Patent Portfolio") directed to network security and access control. This Patent Portfolio is a direct result from the innovation, ingenuity, and work of InfoExpress personnel including Chief Executive Officer and inventor Stacey Lum.

22.     The Patents-in-Suit are part of the Patent Portfolio and relate to specific core and foundational inventions for, and associated with, NAC technology.

23.     The Patent Portfolio, and the Patents-in-Suit solve technological problems that existed relating to the capabilities of controlling access to computing networks in the face of growing user demand for accessing secure networks over the Internet and from personal devices such as laptop computers and other mobile devices.

24.     On April 21, 2009, the '484 Patent entitled "Systems and Methods for Controlling Network Access" was duly and legally issued by the United States Patent and Trademark Office. A true and accurate copy of the '484 Patent is attached hereto as Exhibit A.

25.     On November 1, 2011, the '460 Patent entitled "Systems and Methods for Controlling Network Access" was duly and legally issued by the United States Patent and Trademark Office.  A true and accurate copy of the '460 Patent is attached hereto as Exhibit B.

26.     On March 18, 2014, the '450 Patent entitled "Systems and Methods for Controlling Network Access" was duly and legally issued by the United States Patent and Trademark Office.  A true and accurate copy of the '450 Patent is attached hereto as Exhibit C.

27.     On November 5, 2013, the '444 Patent entitled "Systems and Methods of Controlling Network Access" was duly and legally issued by the United States Patent and Trademark Office.  A true and accurate copy of the '444 Patent is attached hereto as Exhibit D.

28.     On January 1, 2013, the '350 Patent entitled "Systems and Methods of Controlling Network Access" was duly and legally issued by the United States Patent and Trademark Office.  A true and accurate copy of the '350 Patent is attached hereto as Exhibit E.

29.     On February 14, 2012, the '645 Patent entitled "Systems and Methods of Controlling Network Access" was duly and legally issued by the United States Patent and Trademark Office.  A true and accurate copy of the '645 Patent is attached hereto as Exhibit F.

30.     The Patents-in-Suit are valid and enforceable.

31.     At least as of the 2003 priority date, the inventions as claimed in the Patents-in-Suit were novel, non-obvious, unconventional, and non-routine.

32.     InfoExpress is the assignee of and owns all right, title, and interests in the Patents-in-Suit, including the right to receive lost profits and/or a reasonable royalty, and recovery of any and all other damages for all past and future infringement thereof.

33.     To the extent 35 U.S.C. § 287 is applicable, the requirements have been satisfied with respect to the Patents-in-Suit.

***Cisco's Infringing Instrumentalities***

34.     Cisco has been making, using, selling, importing, and offering for sale hardware and software (including licenses) that implement or practice the Patents-in-Suit including those for and relating to its NAC products such as the Identity Services Engine ("ISE") alone, and in combination with, Cisco products such as:

- Cisco's wireless access points, including its Catalyst 9100 access points (including its 9136, 9196, 9164, 9162, 9130, 9120, 9115, 9105i, and 9105w models) and further including its Meraki cloud-controlled access points;

- Cisco's Secure Network Servers (SNS) including its SNS 3615, 3655, and 3695; and

- Cisco's routers, including those in its 9000-series, which implement ISE to the same extent as its other products.

(hereinafter, the "Accused Instrumentalities.").

35.     Cisco's ISE is "an identity-based network access control and policy enforcement system. It functions as a common policy engine that enables endpoint access control and network device administration for enterprises."



**Cisco ISE Overview**

Cisco Identity Services Engine (ISE) is an identity-based network access control and policy enforcement system. It functions as a common policy engine that enables endpoint access control and network device administration for enterprises.

36.     In particular, the Cisco ISE can be used to "control and audit the configuration of network devices… Network devices can be configured to query Cisco ISE for authentication and authorization of device administrator actions."

## Cisco ISE Features

• **Device Administration**: Cisco ISE uses the TACACS+ security protocol to control and audit the configuration of network devices. It facilitates granular control of who can access which network device and change the associated network settings. Network devices can be configured to query Cisco ISE for authentication and authorization of device administrator actions. These devices also send accounting messages to Cisco ISE to log such actions.

• **Posture or Compliance**: Cisco ISE allows you to check for compliance, also known as posture, of endpoints, before allowing them to connect to your network. You can ensure that endpoints receive the appropriate posture agents for posturing services.

37.     As a security policy management platform, Cisco's ISE "allows you to check for compliance, also known as posture, of endpoints, before allowing them to connect to your network."

38.     For authentication, Cisco's ISE also interfaces with and controls access points – such as those offered by Cisco and including routers or switches – to further network access control.  For example, ISE can use an Authorization VLAN (Virtual Local Area Network) as a restricted space to confine a user endpoint device (e.g.  laptop computer, smart phone, etc.) when it connects to an access point.  While the endpoint is confined, Cisco's ISE can use its security gatekeeper to assess the security posture of that device.  Once the endpoint is found to meet security requirements, ISE reconfigures the access point by assigning the endpoint to another VLAN (e.g. Corporate VLAN) where the endpoint device will be able to access, and communicate with, secure resources.



Figure 30: Auth VLAN Connected to Cisco ISE Node

The following diagram displays a network with Auth VLAN and an IP helper.

Figure 31: Auth VLAN Configured with IP Helper



Cisco, *Identity Services Engine Administrator Guide, Release 3.0* ("ISE Admin Guide"), at 1, 2, 802-03, *available at* https://www.cisco.com/c/en/us/td/docs/security/ise/3-0/admin_guide/b_ISE_admin_3_0.pdf

39.    Cisco itself practices the claimed inventions in the Patents-in-Suit, for example at its locations and campuses in this District and throughout the United States.

### *Cisco and InfoExpress Prior Relationship*

40.    In or around 2004, after the priority date of the patent portfolio, InfoExpress worked together with Cisco under the auspices of a relationship in which Cisco would help

commercialize InfoExpress's NAC technology products—including its CyberGatekeeper LAN product—through interoperability with Cisco's routing, switching, security, wireless, and voice products.

41. Through this arrangement, InfoExpress was asked to integrate its NAC technology products with Cisco's access point and infrastructure products. To do so, InfoExpress was required to conduct a variety of testing, configuring, and analysis with respect to its NAC technology products and to obtain Cisco's approval.

42. Cisco eventually approved it, thus permitting InfoExpress to participate in marketing activities, which resulted in substantial customer response and feedback with respect to its NAC technology products.

43. This relationship and process also resulted in Cisco receiving this important and valuable knowledge, technical expertise, customer feedback, and information concerning InfoExpress's NAC technology including that associated with the various NAC functionalities for authentication, policy enforcement and posture compliance.

44. After receiving such valuable information regarding InfoExpress's NAC technology (and other third-party NAC products) and customer feedback, Cisco canceled its arrangement with InfoExpress and substituted in its own NAC technology products that it had been developing alongside which would be compliant with its Cisco access points and network infrastructure.

45. On information and belief, Cisco used the information it obtained through its relationship with InfoExpress to develop its own NAC technology products and to compete with InfoExpress.

46.     Cisco then used its size and market presence to sell its infringing version of its NAC technology, including ISE, to drive revenue and additionally further its sales of its access points, servers, software, and other products in its security infrastructure.

47.     On information and belief, and at least given the InfoExpress-Cisco relationship, Cisco was aware of InfoExpress's pending Patent Portfolio and the Patents-in-Suit at the time of such relationship and then following thereafter.

48.     In addition, Cisco has knowledge of the Patent Portfolio including certain of the Patents-in-Suit, and of its infringement thereof, because of Cisco's own patent prosecution.

49.     In Cisco's prosecution of U.S. Published App. No. 2013/0290224, the United States Patent and Trademark Office issued a February 3, 2015 Non-Final Rejection which discusses InfoExpress's U.S. Patent No. 8,347,351 and its disclosure of "document the full state machine for port level authentication of one of a:  personal computer or phone (citing Fig. 1, elements 110 and 120, abstract, security policy [col. 2:56-3:33, 6:25-41])."

50.     Cisco's May 1, 2015 Response to that Non-Final Rejection discusses and characterizes InfoExpress's '351 Patent.

51.     In the prosecution of Cisco's application no. 11/608,114, the Examiner's May 14, 2009 rejection cited to InfoExpress's published, pending application 2005/0063400 A1 (which, at that time, had matured into the asserted '484 Patent).

52.     Cisco's patent prosecution at the U.S. Patent and Trademark Office meant that Cisco had knowledge of at least the '484 and '351 patents.  Given the prior relationship between Cisco and InfoExpress, coupled with these rejections, Cisco must have tracked any continuations of the cited InfoExpress patent applications, and thereby had additional knowledge of the Patents-in-Suit upon issuance.

53.     Accordingly, because of Cisco's knowledge of InfoExpress's Patent Portfolio, including the Patents-in-Suit, coupled with Cisco's and InfoExpress's previous relationship, and Cisco's knowledge obtained through prosecution of its own patent portfolio, Cisco knew of the InfoExpress Patent Portfolio (including the Patents-In-Suit) and had knowledge of its infringement, or at least was willfully blind to its infringement.

54.     Cisco has been aware that it infringes the Patents-in-Suit since at least as of the date of filing this Complaint, and at earliest of the first to issue patents.  Since obtaining knowledge of its infringing activities, Cisco has failed to cease its infringing activities.

55.     Cisco has infringed, and continues to infringe, claims of the Patents-In-Suit in the United States by making, using, offering for sale, selling and/or importing the Accused Instrumentalities in violation of 35 U.S.C. § 271(a).

56.     Cisco induces infringement by others of one or more claims of the Patents-in-Suit in violation of 35 U.S.C. § 271(b) in aiding, instructing, promoting, encouraging or otherwise acting with the intent to cause other parties, including customers, to use its Accused Instrumentalities.  Cisco is aware of the Patents-in-Suit, at least as of the filing and/or service of this lawsuit, and knows or should have known that the inducing acts described herein constitutes infringement of the Patents-in-Suit.

57.     Cisco takes specific steps to actively induce others—for example, customers—to use the Accused Instrumentalities and intentionally instructs infringing use at least by providing:

(1) brochures, installation and user guides, such as its *ISE Admin Guide*, which as discussed above, instructs Cisco's customers to use ISE in infringing manner, as shown below by way of example.  The purpose of the Admin Guide and other literature is to instruct Cisco's customers how to use ISE in an infringing manner:

*Figure 30: Auth VLAN Connected to Cisco ISE Node*



The following diagram displays a network with Auth VLAN and an IP helper.

*Figure 31: Auth VLAN Configured with IP Helper*





*ISE Admin Guide* at pages 803-04 (Figures 30-31), 828 (Figure 32);

(2) webinars, training videos and demonstrations, for example, Cisco, *Secure Access with ISE*,

https://www.youtube.com/watch?v=rjv_1MNUbpM&list=PLvBZXH_IO6nCu9p49Tl1L E4kY6mpyz1eN&index=27, which (as specifically shown at 11:44 and 1:02:18), which, as shown in still images below, instructs third-party users to use the accused ISE instrumentality.  The purpose of the this video and others is to instruct Cisco's customers how to use ISE in an infringing manner:

(3) software updates to its ISE through at least its website at

https://software.cisco.com/download/home/283801620/type/283802505/release/3.1.0,

whereby third party users are permitted to download certain portions of updated ISE

(such as software patches, etc.):



(4) product support for ISE through its Cisco Support (*see, e.g.*, Cisco's Technical Assistance Center ("TAC")), whereby users can obtain technical support for their ISE products—for example, by gathering information such as error reports (either as a default feature on ISE, or at the specific request of Cisco personal), and then upload that information to Cisco personnel for troubleshooting, as shown below:

## Collect Support Bundle on Cisco ISE

### Step 1. Enable Debugs for ISE Components

Various issues on ISE require different sets of logs to troubleshoot. A full list of needed debugs must be provided by the TAC engineer. However, ISE 3.x has preconfigured categories of debugs which you can use to collect initial logos to speed up case resolution.

The list of debugs requested by the TAC engineer must always take priority over this list.

In order to find these preconfigured debugs navigate to Operations > Troubleshoot > Debug Wizard > Debug Profile Configuration.

Choose the feature for which debugs must be enabled with the choice of the proper check box at the beginning of each row, for example, 802.1x (red), and navigate to node selection (green):

. . . .

When the process to create the Support Bundle is completed, it is available for download. After you click the `Download` button, the Support Bundle is saved on the local disk of the PC and can be uploaded to TAC in order to troubleshoot.

If the Web interface is not available, you can collect the Support Bundle from CLI. In order to do this, log in with the use of SSH or console access and use the command:

```
backup-logs name repository ftp {encryption-key plain key | public-key}
```

name - the name of your Support Bundle

ftp - the name of the repository configured on ISE

key - is the key used for encrypting/decrypting the Support Bundle

The official tool to upload the Support Bundle is https://mycase.cloudapps.cisco.com/case.

Do not zip or change the extension of the Support Bundle file. It must be uploaded in the same exact state as it was downloaded from ISE.

Cisco, *Collect Support Bundle on the Identity Services Engine* https://www.cisco.com/c/en/us/support/docs/security/identity-services-engine/214153-collect-support-bundle-on-cisco-identity.pdf (last visited May 30, 2023).

(5) an online community for NAC and ISE support, hosted at

https://community.cisco.com/t5/network-access-control/bd-p/discussions-network-

access-control, whereby users can pose technical questions about ISE, and others

(including Cisco personnel) can answer them, such as in the example below:





Cisco, *AWS and ISE and Upgrades* (March 8, 2022),
https://community.cisco.com/t5/network-access-control/aws-and-ise-and-upgrades/td-p/4566282
(last visited May 30, 2023).

58.     Cisco's activities cause users to use and infringe the systems and methods claimed
in the Patents-In-Suit.

59.     Cisco has also contributed to the infringement of one or more claims of the Patents-in-Suit, and continues to do so, by offering to commercially distribute, commercially distributing, or importing software and devices that constitute components of InfoExpress's patented devices, and/or are configured to practice InfoExpress's claimed methods.

60.     For example, Cisco is liable for contributory infringement by making, using, selling, and offering to sell its servers, ISE hardware and software, and instructing users to infringe the claims of the Patents-in-Suit.

61.     Cisco's servers—including (at least) its Secure Network Servers (SNSs) 3615, 3655, and 3695 ("Cisco Servers")—are material parts of InfoExpress's claimed devices and systems, and are configured to practice InfoExpress's claimed methods of NAC.

62.     These Cisco Servers are "configured specifically to support the Cisco Identity Services Engine (ISE) security application."  These servers are not a staple article or commodity of commerce suitable for substantial noninfringing use.

The Cisco® Secure Network Server is based on the Cisco UCS® C220 Rack Server and is configured specifically to support the Cisco Identity Services Engine (ISE) security application. The Secure Network Server supports these applications in five versions. The Cisco Secure Network Server 3615 is designed for small deployments. The Secure Network Server 3655 and 3695 have several redundant components such as hard disks and power supplies, making it suitable for larger deployments that require highly reliable system configurations.

Figure 1 shows the Cisco Secure Network Server.



**Figure 1.**
Cisco SNS-3615, SNS-3655, and SNS-3695 Secure Network Server

## Product specifications

Table 1 lists specifications of the Cisco Secure Network Server.

**Table 1.**    Product specifications

| Product Name | Secure Network Server 3615 | Secure Network Server 3655 | Secure Network Server 3655 |
|---|---|---|---|
| Processor | 1 – Intel Xeon<br>2.10 GHz 4110 | 1 – Intel Xeon<br>2.10 GHz 4116 | 1 – Intel Xeon<br>2.10 GHz 4116 |
| Cores per processor | 8 | 12 | 12 |
| Memory | 32 GB (2 x 16 GB) | 96 GB (6 x 16 GB) | 256 GB (8 x 32 GB) |
| Hard Disk | 1 – 2.5-in.<br>600–GB 6Gb SAS 10K RPM | 4 – 2.5-in.<br>600–GB 6Gb SAS 10K RPM | 8 – 2.5-in.<br>600–GB 6Gb SAS 10K RPM |

Cisco, Secure Network Servers Datasheet (2023), *available at* https://www.cisco.com/c/en/us/products/collateral/security/identity-services-engine/datasheet-c78-726524.pdf  (last visited March 14, 2023).

63.     Additionally, Cisco is liable for contributory infringement under 35 U.S.C. 271(c) because Cisco's software and devices reconfigure the communication port of an access point for communicating data between a user endpoint and protected resources on a protected network, once requirements of the security policy are satisfied.  As such, Cisco's software and devices are especially made or especially adapted for use in an infringement, and are not a staple articles or commodities of commerce suitable for substantial noninfringing use.  Cisco knows portions of the Accused Instrumentalities to be especially made or especially adapted for use in infringement of the Patents-in-Suit, not a staple article, and not a commodity of commerce suitable for substantially noninfringing use.

64.     Cisco undertook and continues its infringing actions despite that it knew and/or should have known that its actions constituted an unjustifiably high risk that its activities infringed the Patents-in-Suit, which were duly issued by the USPTO, and are presumed valid. Since first working with InfoExpress, and at the latest, the filing of this action, Cisco has been aware of the unjustifiably high risk that its actions constituted and continue to constitute infringement of the Patents-in-Suit, and that the Patents-in-Suit are valid. Cisco could not reasonably, subjectively believe that its actions do not constitute infringement of the Patents-in-Suit, and it could not reasonably, subjectively believe that the Patents-in-Suit are invalid. Despite this knowledge and subjective belief, and the unjustifiably high risk that its actions constitute infringement, Cisco has continued its infringing activities. As such, Cisco willfully infringes the Patents-in-Suit.

**COUNT I:  INFRINGEMENT OF THE '484 PATENT**

65.     InfoExpress incorporates all previous paragraphs by reference as if fully stated herein.

66.     InfoExpress owns all substantial rights, interest, and title in and to the '484 Patent, including the sole and exclusive right to prosecute this action and enforce the '484 Patent against infringers, and to collect damages for all relevant times.

67.     The '484 Patent describes in technical detail each of the limitations of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patentably distinct from and improved upon what may have been conventional or generic in the art at the time of the invention.

68.     As set forth in the attached exemplary non-limiting Claim Chart (Exhibit G), Cisco, without authorization or license from InfoExpress, has been and is presently directly infringing, literally or under the doctrine of equivalents, at least one claim, including claim 41, of

1    the '484 Patent, pursuant to 35 U.S.C. § 271(a), including through making, using, selling,

2    offering to sell, and importing, in the United States the Accused Instrumentalities.

3            69.    Cisco actively induces infringement under § 271(b) of at least one claim of the

4    '484 Patent by selling to its customers the Accused Instrumentalities with instructions as to how

5    to use the Accused Instrumentalities in a method such as recited in the '484 Patent.  Cisco

6    knowingly aids, instructs, or otherwise acts with the specific intent to cause an end user to use

7    the Accused Instrumentalities.  As noted above in paragraph 57, Cisco provides to third parties

8    (including its customers) (1) brochures and literature such as its ISE Admin Guide; (2) webinars,

9    training videos and demonstrations; (3) software updates to ISE; (4) product support for ISE; and

10   (5) an online community for NAC and ISE support, all of which instruct those third parties to

11   infringe the '484 patent.  Additionally, Cisco knew of the '484 Patent and knew that its use and

12   sale of the Accused Instrumentalities infringe at least one claim of the '484 Patent, and Cisco is

13   thus liable for inducement of the '484 Patent pursuant to 35 U.S.C. § 271(b).

14           70.    Cisco is liable for contributory infringement under § 271(c) of at least one claim

15   of the '484 Patent by providing, and by having knowingly provided the Accused

16   Instrumentalities, including the Cisco Servers and the ISE software and devices used to infringe

17   at least one claim of the '484 Patent.  Cisco's ISE software, as sold, contains instructions for

18   performing the claimed methods of the '484 patent.  Similarly, Cisco Servers are material parts

19   of InfoExpress's claimed inventions, and are configured to practice InfoExpress's claimed

20   methods of NAC.  For example, Cisco's software and devices reconfigure the communication

21   port of an access point for communicating data between a user endpoint and protected resources

22   on a protected network, once requirements of the security policy are satisfied.

23           71.    Cisco has known or should have known that its Cisco Servers and ISE software

24   and devices are especially made or especially adapted for use in infringement of the Patents-in-

1  Suit, not staple articles, and not commodities of commerce suitable for substantially

2  noninfringing use.

3      72.    To the extent 35 U.S.C. § 287 is determined to be applicable, its requirements

4  have been satisfied with respect to the '484 Patent.

5      73.    InfoExpress has been damaged as a result of the infringing conduct by Cisco

6  alleged above.  Thus, Cisco is liable to InfoExpress in an amount that compensates it for such

7  infringement, which by law cannot be less than a reasonable royalty and in an amount yet to be

8  determined.  InfoExpress is also entitled to receive such other and further relief, as this Court

9  deems just and proper.

10      74.    InfoExpress alleges that Cisco's infringement of the '484 Patent has been and

11  continues to be deliberate and willful and egregious, and, therefore, this is an exceptional case

12  warranting an award of enhanced damages for up to three times the actual damages awarded and

13  attorney's fees to InfoExpress pursuant to 35 U.S.C. §§ 284-285.  As noted above, Cisco has had

14  knowledge of the '484 Patent or at least was willfully blind to its infringement, as well as related

15  patents and patent applications, and its infringement thereof, and yet has deliberately continued

16  to infringe in a wanton, malicious, and egregious manner, with reckless disregard for

17  InfoExpress's patent rights.  Thus, Cisco's infringing actions have been and continue to be

18  consciously wrongful.

19      75.    Cisco's use of the '484 Patent is not licensed or authorized by InfoExpress in any

20  way.

21            **COUNT II:  INFRINGEMENT OF THE '460 PATENT**

22      76.    InfoExpress incorporates all previous paragraphs by reference as if fully stated

23  herein.

24

COMPLAINT FOR PATENT INFRINGEMENT            Case No._____

41631741.6

77. InfoExpress owns all substantial rights, interest, and title in and to the '460 Patent, including the sole and exclusive right to prosecute this action and enforce the '460 Patent against infringers, and to collect damages for all relevant times.

78. The '460 Patent describes in technical detail each of the limitations of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patentably distinct from and improved upon what may have been conventional or generic in the art at the time of the invention.

79. As set forth in the attached exemplary non-limiting Claim Chart (Exhibit H), Cisco, without authorization or license from InfoExpress, has been and is presently directly infringing, literally or under the doctrine of equivalents, at least one claim, including claim 16, of the '460 Patent, pursuant to 35 U.S.C. § 271(a), including through making, using, selling, offering to sell, and importing, in the United States the Accused Instrumentalities.

80. Cisco actively induces infringement under § 271(b) of at least one claim of the '460 Patent by selling to its customers the Accused Instrumentalities with instructions as to how to use the Accused Instrumentalities in a method such as recited in the '460 Patent. Cisco knowingly aids, instructs, or otherwise acts with the specific intent to cause an end user to use the Accused Instrumentalities. As noted above in paragraph 57, Cisco provides to third parties (including its customers) (1) brochures and literature such as its ISE Admin Guide; (2) webinars, training videos and demonstrations; (3) software updates to ISE; (4) product support for ISE; and (5) an online community for NAC and ISE support, all of which instruct those third parties to infringe the '460 patent. Additionally, Cisco knew of the '460 Patent and knew that its use and sale of the Accused Instrumentalities infringe at least one claim of the '460 Patent, and Cisco is thus liable for inducement of the '460 Patent pursuant to 35 U.S.C. § 271(b).

81.     Cisco is liable for contributory infringement under § 271(c) of at least one claim of the '460 Patent by providing, and by having knowingly provided the Accused Instrumentalities, including the Cisco Servers and the ISE software and devices used to infringe at least one claim of the '460 Patent.  Cisco's ISE software, as sold, contains instructions for performing the claimed methods of the '460 patent.  Similarly, Cisco Servers are material parts of InfoExpress's claimed inventions, and are configured to practice InfoExpress's claimed methods of NAC.  Additionally, Cisco's software and devices reconfigure the communication port of an access point for communicating data between a user endpoint and protected resources on a protected network, once requirements of the security policy are satisfied.

82.     Cisco has known or should have known that its Cisco Servers and ISE software and devices are especially made or especially adapted for use in infringement of the Patents-in-Suit, not staple articles, and not commodities of commerce suitable for substantially noninfringing use.

83.     To the extent 35 U.S.C. § 287 is determined to be applicable, its requirements have been satisfied with respect to the '460 Patent.

84.     InfoExpress has been damaged as a result of the infringing conduct by Cisco alleged above.  Thus, Cisco is liable to InfoExpress in an amount that compensates it for such infringement, which by law cannot be less than a reasonable royalty and in an amount yet to be determined.  InfoExpress is also entitled to receive such other and further relief, as this Court deems just and proper.

85.     InfoExpress alleges that Cisco's infringement of the '460 Patent has been and continues to be deliberate and willful and egregious, and, therefore, this is an exceptional case warranting an award of enhanced damages for up to three times the actual damages awarded and attorney's fees to InfoExpress pursuant to 35 U.S.C. §§ 284-285.  As noted above, Cisco has had

knowledge of the '460 Patent or at least was willfully blind to its infringement, as well as related patents and patent applications, and its infringement thereof, and yet has deliberately continued to infringe in a wanton, malicious, and egregious manner, with reckless disregard for InfoExpress's patent rights.  Thus, Cisco's infringing actions have been and continue to be consciously wrongful.

86.     Cisco's use of the '460 Patent is not licensed or authorized by InfoExpress in any way.

**COUNT III:  INFRINGEMENT OF THE '450 PATENT**

87.     InfoExpress incorporates all previous paragraphs by reference as if fully stated herein.

88.     InfoExpress owns all substantial rights, interest, and title in and to the '450 Patent, including the sole and exclusive right to prosecute this action and enforce the '450 Patent against infringers, and to collect damages for all relevant times.

89.     The '450 Patent describes in technical detail each of the limitations of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patentably distinct from and improved upon what may have been conventional or generic in the art at the time of the invention.

90.     As set forth in the attached exemplary non-limiting Claim Chart (Exhibit I), Cisco, without authorization or license from InfoExpress, has been and is presently directly infringing, literally or under the doctrine of equivalents, at least one claim, including claim 1, of the '450 Patent, pursuant to 35 U.S.C. § 271(a), including through making, using, selling, offering to sell, and importing, in the United States the Accused Instrumentalities.

91.     Cisco actively induces infringement under § 271(b) of at least one claim of the '450 Patent by selling to its customers the Accused Instrumentalities with instructions as to how

to use the Accused Instrumentalities in a method such as recited in the '450 Patent.  Cisco

knowingly aids, instructs, or otherwise acts with the specific intent to cause an end user to use

the Accused Instrumentalities.  As noted above in paragraph 57, Cisco provides to third parties

(including its customers) (1) brochures and literature such as its ISE Admin Guide; (2) webinars,

training videos and demonstrations; (3) software updates to ISE; (4) product support for ISE; and

(5) an online community for NAC and ISE support, all of which instruct those third parties to

infringe the '450 patent.  Additionally, Cisco knew of the '450 Patent and knew that its use and

sale of the Accused Instrumentalities infringe at least one claim of the '450 Patent, and Cisco is

thus liable for inducement of the '450 Patent pursuant to 35 U.S.C. § 271(b).

92.     Cisco is liable for contributory infringement under § 271(c) of at least one claim

of the '450 Patent by providing, and by having knowingly provided the Accused

Instrumentalities, including the Cisco Servers and the ISE software and devices used to infringe

at least one claim of the '450 Patent.  Cisco's ISE software, as sold, contains instructions for

performing the claimed methods of the '450 patent.  Similarly, Cisco Servers are material parts

of InfoExpress's claimed inventions, and are configured to practice InfoExpress's claimed

methods of NAC.  Additionally, Cisco's software and devices scan a network device connected

to an access point to collect information regarding that device, apply a security policy that relates

to such information, and configure the access point in response to a result of applying the

security policy.

93.     Cisco has known or should have known that its Cisco Servers and ISE software

and devices are especially made or especially adapted for use in infringement of the Patents-in-

Suit, not staple articles, and not commodities of commerce suitable for substantially

noninfringing use.

94.     To the extent 35 U.S.C. § 287 is determined to be applicable, its requirements have been satisfied with respect to the '450 Patent.

95.     InfoExpress has been damaged as a result of the infringing conduct by Cisco alleged above.  Thus, Cisco is liable to InfoExpress in an amount that compensates it for such infringement, which by law cannot be less than a reasonable royalty and in an amount yet to be determined.  InfoExpress is also entitled to receive such other and further relief, as this Court deems just and proper.

96.     InfoExpress alleges that Cisco's infringement of the '450 Patent has been and continues to be deliberate and willful and egregious, and, therefore, this is an exceptional case warranting an award of enhanced damages for up to three times the actual damages awarded and attorney's fees to InfoExpress pursuant to 35 U.S.C. §§ 284-285.  As noted above, Cisco has had knowledge of the '450 Patent or at least was willfully blind to its infringement, as well as related patents and patent applications, and its infringement thereof, and yet has deliberately continued to infringe in a wanton, malicious, and egregious manner, with reckless disregard for InfoExpress's patent rights.  Thus, Cisco's infringing actions have been and continue to be consciously wrongful.

97.     Cisco's use of the '450 Patent is not licensed or authorized by InfoExpress in any way.

**COUNT IV:  INFRINGEMENT OF THE '444 PATENT**

98.     InfoExpress incorporates all previous paragraphs by reference as if fully stated herein.

99.     InfoExpress owns all substantial rights, interest, and title in and to the '444 Patent, including the sole and exclusive right to prosecute this action and enforce the '444 Patent against infringers, and to collect damages for all relevant times.

100.     The '444 Patent describes in technical detail each of the limitations of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patentably distinct from and improved upon what may have been conventional or generic in the art at the time of the invention.

101.     As set forth in the attached exemplary non-limiting Claim Chart (Exhibit J), Cisco, without authorization or license from InfoExpress, has been and is presently directly infringing, literally or under the doctrine of equivalents, at least one claim, including claim 1, of the '444 Patent, pursuant to 35 U.S.C. § 271(a), including through making, using, selling, offering to sell, and importing, in the United States the Accused Instrumentalities.

102.     Cisco actively induces infringement under § 271(b) of at least one claim of the '444 Patent by selling to its customers the Accused Instrumentalities with instructions as to how to use the Accused Instrumentalities in a method such as recited in the '444 Patent.  Cisco knowingly aids, instructs, or otherwise acts with the specific intent to cause an end user to use the Accused Instrumentalities.  As noted above in paragraph 57, Cisco provides to third parties (including its customers) (1) brochures and literature such as its ISE Admin Guide; (2) webinars, training videos and demonstrations; (3) software updates to ISE; (4) product support for ISE; and (5) an online community for NAC and ISE support, all of which instruct those third parties to infringe the '444 patent.  Additionally, Cisco knew of the '444 Patent and knew that its use and sale of the Accused Instrumentalities infringe at least one claim of the '444 Patent, and Cisco is thus liable for inducement of the '444 Patent pursuant to 35 U.S.C. § 271(b).

103.     Cisco is liable for contributory infringement under § 271(c) of at least one claim of the '444 Patent by providing, and by having knowingly provided the Accused Instrumentalities, including the Cisco Servers and the ISE software and devices used to infringe at least one claim of the '444 Patent.  Cisco's ISE software, as sold, contains instructions for

performing the claimed methods of the '444 patent.  Similarly, Cisco Servers are material parts of InfoExpress's claimed inventions, and are configured to practice InfoExpress's claimed methods of NAC.  Additionally, Cisco's software and devices authenticate using an EAP protocol, send a request for audit data to an agent running on a device, receive audit data from that device in response to that request, and apply a security policy relating to the audit data and the authentication.

104.    Cisco has known or should have known that its Cisco Servers and ISE software and devices are especially made or especially adapted for use in infringement of the Patents-in-Suit, not staple articles, and not commodities of commerce suitable for substantially noninfringing use.

105.    To the extent 35 U.S.C. § 287 is determined to be applicable, its requirements have been satisfied with respect to the '444 Patent.

106.    InfoExpress has been damaged as a result of the infringing conduct by Cisco alleged above.  Thus, Cisco is liable to InfoExpress in an amount that compensates it for such infringement, which by law cannot be less than a reasonable royalty and in an amount yet to be determined.  InfoExpress is also entitled to receive such other and further relief, as this Court deems just and proper.

107.    InfoExpress alleges that Cisco's infringement of the '444 Patent has been and continues to be deliberate and willful and egregious, and, therefore, this is an exceptional case warranting an award of enhanced damages for up to three times the actual damages awarded and attorney's fees to InfoExpress pursuant to 35 U.S.C. §§ 284-285.  As noted above, Cisco has had knowledge of the '444 Patent or at least was willfully blind to its infringement, as well as related patents and patent applications, and its infringement thereof, and yet has deliberately continued to infringe in a wanton, malicious, and egregious manner, with reckless disregard for

1  InfoExpress's patent rights.  Thus, Cisco's infringing actions have been and continue to be

2  consciously wrongful.

3      108.    Cisco's use of the '444 Patent is not licensed or authorized by InfoExpress in any

4  way.

5              **COUNT V:  INFRINGEMENT OF THE '350 PATENT**

6      109.    InfoExpress incorporates all previous paragraphs by reference as if fully stated

7  herein.

8      110.    InfoExpress owns all substantial rights, interest, and title in and to the '350 Patent,

9  including the sole and exclusive right to prosecute this action and enforce the '350 Patent against

10  infringers, and to collect damages for all relevant times.

11      111.    The '350 Patent describes in technical detail each of the limitations of the claims,

12  allowing a skilled artisan to understand the scope of the claims and how the non-conventional

13  and non-generic combination of claim limitations is patentably distinct from and improved upon

14  what may have been conventional or generic in the art at the time of the invention.

15      112.    As set forth in the attached exemplary non-limiting Claim Chart (Exhibit K),

16  Cisco, without authorization or license from InfoExpress, has been and is presently directly

17  infringing, literally or under the doctrine of equivalents, at least one claim, including claim 1,  of

18  the '350 Patent, pursuant to 35 U.S.C. § 271(a), including through making, using, selling,

19  offering to sell, and importing, in the United States the Accused Instrumentalities.

20      113.    Cisco actively induces infringement under § 271(b) of at least one claim of the

21  '350 Patent by selling to its customers the Accused Instrumentalities with instructions as to how

22  to use the Accused Instrumentalities in a method such as recited in the '350 Patent.  Cisco

23  knowingly aids, instructs, or otherwise acts with the specific intent to cause an end user to use

24  the Accused Instrumentalities.  As noted above in paragraph 57, Cisco provides to third parties

(including its customers) (1) brochures and literature such as its ISE Admin Guide; (2) webinars, training videos and demonstrations; (3) software updates to ISE; (4) product support for ISE; and (5) an online community for NAC and ISE support, all of which instruct those third parties to infringe the '350 patent.  Additionally, Cisco knew of the '350 Patent and knew that its use and sale of the Accused Instrumentalities infringe at least one claim of the '350 Patent, and Cisco is thus liable for inducement of the '350 Patent pursuant to 35 U.S.C. § 271(b).

114.    Cisco is liable for contributory infringement under § 271(c) of at least one claim of the '350 Patent by providing, and by having knowingly provided the Accused Instrumentalities, including the Cisco Servers and the ISE software and devices used to infringe at least one claim of the '350 Patent.  Cisco's ISE software, as sold, contains instructions for performing the claimed methods of the '350 patent.  Similarly, Cisco Servers are material parts of InfoExpress's claimed inventions, and are configured to practice InfoExpress's claimed methods of NAC.  Additionally, Cisco's software and devices receive audit data pertaining to a device that does not have access to a less-restricted subset of a network, audit the device in accordance with a security policy based at least in part on the audit data, reconfigure an access point to allow access to the less-restricted subset of the network in response to the security policy audit, and continually receive and evaluate updated audit data.

115.    Cisco has known or should have known that its Cisco Servers and ISE software and devices are especially made or especially adapted for use in infringement of the Patents-in-Suit, not staple articles, and not commodities of commerce suitable for substantially noninfringing use.

116.    To the extent 35 U.S.C. § 287 is determined to be applicable, its requirements have been satisfied with respect to the '350 Patent.

117.    InfoExpress has been damaged as a result of the infringing conduct by Cisco alleged above.  Thus, Cisco is liable to InfoExpress in an amount that compensates it for such infringement, which by law cannot be less than a reasonable royalty and in an amount yet to be determined.  InfoExpress is also entitled to receive such other and further relief, as this Court deems just and proper.

118.    InfoExpress alleges that Cisco's infringement of the '350 Patent has been and continues to be deliberate and willful and egregious, and, therefore, this is an exceptional case warranting an award of enhanced damages for up to three times the actual damages awarded and attorney's fees to InfoExpress pursuant to 35 U.S.C. §§ 284-285.  As noted above, Cisco has had knowledge of the '350 Patent or at least was willfully blind to its infringement, as well as related patents and patent applications, and its infringement thereof, and yet has deliberately continued to infringe in a wanton, malicious, and egregious manner, with reckless disregard for InfoExpress's patent rights.  Thus, Cisco's infringing actions have been and continue to be consciously wrongful.

119.    Cisco's use of the '350 Patent is not licensed or authorized by InfoExpress in any way.

**COUNT VI:  INFRINGEMENT OF THE '645 PATENT**

120.    InfoExpress incorporates all previous paragraphs by reference as if fully stated herein.

121.    InfoExpress owns all substantial rights, interest, and title in and to the '645 Patent, including the sole and exclusive right to prosecute this action and enforce the '645 Patent against infringers, and to collect damages for all relevant times.

122.    The '645 Patent describes in technical detail each of the limitations of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional

and non-generic combination of claim limitations is patentably distinct from and improved upon what may have been conventional or generic in the art at the time of the invention.

123.    As set forth in the attached exemplary non-limiting Claim Chart (Exhibit L), Cisco, without authorization or license from InfoExpress, has been and is presently directly infringing, literally or under the doctrine of equivalents, at least one claim, including claim 1, of the '645 Patent, pursuant to 35 U.S.C. § 271(a), including through making, using, selling, offering to sell, and importing, in the United States the Accused Instrumentalities.

124.    Cisco actively induces infringement under § 271(b) of at least one claim of the '645 Patent by selling to its customers the Accused Instrumentalities with instructions as to how to use the Accused Instrumentalities in a method such as recited in the '645 Patent.  Cisco knowingly aids, instructs, or otherwise acts with the specific intent to cause an end user to use the Accused Instrumentalities.  As noted above in paragraph 57, Cisco provides to third parties (including its customers) (1) brochures and literature such as its ISE Admin Guide; (2) webinars, training videos and demonstrations; (3) software updates to ISE; (4) product support for ISE; and (5) an online community for NAC and ISE support, all of which instruct those third parties to infringe the '645 patent.  Additionally, Cisco knew of the '645 Patent and knew that its use and sale of the Accused Instrumentalities infringe at least one claim of the '645 Patent, and Cisco is thus liable for inducement of the '645 Patent pursuant to 35 U.S.C. § 271(b).

125.    Cisco is liable for contributory infringement under § 271(c) of at least one claim of the '645 Patent by providing, and by having knowingly provided the Accused Instrumentalities, including the Cisco Servers and the ISE software and devices used to infringe at least one claim of the '645 Patent.  Cisco's ISE software, as sold, contains instructions for performing the claimed methods of the '645 patent.  Similarly, Cisco Servers are material parts of InfoExpress's claimed inventions, and are configured to practice InfoExpress's claimed

methods of NAC.  Additionally, Cisco's software and devices formulate and send audit requests to user devices (i.e. endpoints), receive information in response to those audit requests, evaluate that information, receive authentication information from the device using an extensible authentication protocol (EAP), and configure an access point in response to approval of the device by a gatekeeper.

126.    Cisco has known or should have known that its Cisco Servers and ISE software and devices are especially made or especially adapted for use in infringement of the Patents-in-Suit, not staple articles, and not commodities of commerce suitable for substantially noninfringing use.

127.    To the extent 35 U.S.C. § 287 is determined to be applicable, its requirements have been satisfied with respect to the '645 Patent.

128.    InfoExpress has been damaged as a result of the infringing conduct by Cisco alleged above.  Thus, Cisco is liable to InfoExpress in an amount that compensates it for such infringement, which by law cannot be less than a reasonable royalty and in an amount yet to be determined.  InfoExpress is also entitled to receive such other and further relief, as this Court deems just and proper.

129.    InfoExpress alleges that Cisco's infringement of the '645 Patent has been and continues to be deliberate and willful and egregious, and, therefore, this is an exceptional case warranting an award of enhanced damages for up to three times the actual damages awarded and attorney's fees to InfoExpress pursuant to 35 U.S.C. §§ 284-285.  As noted above, Cisco has had knowledge of the '645 Patent or at least was willfully blind to its infringement, as well as related patents and patent applications, and its infringement thereof, and yet has deliberately continued to infringe in a wanton, malicious, and egregious manner, with reckless disregard for

1   InfoExpress's patent rights.  Thus, Cisco's infringing actions have been and continue to be

2   consciously wrongful.

3        130.   Cisco's use of the '645 Patent is not licensed or authorized by InfoExpress in any

4   way.

5   **VI.    DEMAND FOR JURY TRIAL**

6        Pursuant to Federal Rule of Civil Procedure 38(b), InfoExpress hereby demands a trial by

7   jury of any and all issues triable of right before a jury.

8   **VII.   PRAYER FOR RELIEF**

9        **WHEREFORE**, InfoExpress respectfully requests that the Court:

10       A.    Enter a judgment that Cisco has infringed one or more claims of the Patents-in-

11  Suit;

12       B.    Enter a preliminary and permanent injunction against Cisco and its officers,

13  employees, agents, servants, attorneys, instrumentalities, and/or those in privity with them from

14  infringing the Patents-in-Suit and for all further and proper injunctive relief pursuant to 35

15  U.S.C. § 283.

16       C.    Enter a judgment awarding Plaintiff InfoExpress of such damages adequate to

17  compensate it for Cisco's infringement of the Patents-in-Suit, including lost profits but no less

18  than a reasonable royalty, as well as pre-judgment and post-judgment interest at the maximum

19  rate permitted by law,;

20       D.    Declare that the Patents-in-Suit are valid and enforceable;

21       E.    Order Cisco to pay damages adequate to compensate InfoExpress for Cisco's

22  infringement, together with interest and costs under 35 U.S.C. § 284;

23       F.    Order Cisco to pay supplemental damages to InfoExpress, including interest, with

24  an accounting, as needed;

G.      Declare this case exceptional pursuant to 35 U.S.C. § 285;

H.      Declare that Cisco's infringement is willful, wanton, deliberate, and egregious and that the damages awarded to InfoExpress should be enhanced up to three times the actual damages awarded;

I.      Award Plaintiff InfoExpress its costs, disbursements, expert witness fees, and attorneys' fees incurred in prosecution this action, with interest; and

J.      Award Plaintiff InfoExpress other such and further relief, including equitable relief, as this Court deems just and proper.

1 Dated: May 31, 2023     Respectfully submitted,

2

3           */s/ Brian R. Michalek, Esq.*
           Brian R. Michalek (SBN 302007) (*pro hac vice*)
           brian.michalek@saul.com

4           Casey T. Grabenstein (*pro hac vice* forthcoming)
           casey.grabenstein@saul.com

5           Joseph M. Kuo (*pro hac vice* forthcoming)
           joseph.kuo@saul.com

6           SAUL EWING LLP
           161 N. Clark St., Suite 4200

7           Chicago, IL 60601
           Telephone: (312) 876-7100

8           Facsimile: (312) 876-0288

9           Andrew Schwerin (*pro hac vice* forthcoming)
           andrew.schwerin@saul.com

10          Centre Square West
           1500 Market Street, 38th Floor

11          Philadelphia, PA 19102 2186
           Telephone: (215) 972-7184

12          Facsimile: (215) 972-7184

13          Michael E. Flynn-O'Brien (SBN 291301)
           Elizabeth Day (SBN 177125)

14          BUNSOW DE MORY LLP
           701 El Camino Real

15          Redwood City, CA 94063
           Telephone: (650) 351-7245

16          Facsimile: (415) 426-4744
           mflynnobrien@bdiplaw.com

17

18          *Attorneys for Plaintiff InfoExpress Inc.*

19

20

21

22

23

24